IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| AMINA KAMARA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-611 (RDA/WEF) |
| | ) | |
| SELENE FINANCE, LP, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Selene Finance, LP's Motion to Dismiss

(the "Motion") (Dkt. 25).  This Court has dispensed with oral argument as it would not aid in the

decisional process.  *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J).  This matter is fully briefed

and ripe for disposition.  Considering the Amended Complaint (Dkt. 20), Defendant's

Memorandum in Support (Dkt. 26), Plaintiffs' Opposition (Dkt. 35), and Defendant's Reply (Dkt.

41), this Court GRANTS the Motion for the reasons that follow.

I. BACKGROUND

A.  Factual Background[1]

In February 2018, Plaintiffs' mother died at the age of 54.  Dkt. 20 ¶ 29.  At the time of

her death, Plaintiffs' mother owned a home at 2534 Miranda Court, Woodbridge, Virginia (the

"Property").  *Id.* ¶ 30.  She also had a mortgage owned by RFC 2 and serviced by LoanCare.  *Id.*

The mortgage was secured against the Property by a deed of trust (the "Deed of Trust").  *Id.*  The

---

[1] For purposes of considering the Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

Property is designed principally for the occupancy of one family. *Id.* ¶ 31. The Plaintiffs are the only surviving heirs of their mother, as she had no surviving spouse. *Id.* ¶ 32. She also died without a will. *Id.* Following their mother's passing, Plaintiffs continued to make payments on the mortgage secured against the Property. *Id.* ¶ 33. The servicer of the loan at the time, LoanCare, confirmed Plaintiff Amina Kamara's ("Kamara") status as a successor in interest on the mortgage and accepted these payments, stating the following: "You have been confirmed as the successor in interest to the property and a letter confirming your status as such will be mailed to you shortly." *Id.* ¶ 34.

In or around January 2022, Defendant Selene Financing, LP obtained servicing rights to the mortgage. *Id.* ¶ 35. For a year and a half, Defendant continued to treat Kamara as a confirmed successor in interest on the loan. *Id.* ¶ 36. For example, Defendant allowed Kamara to set up online access to the account and accepted Kamara's monthly payments on the loan. *Id.* ¶ 37.

In July 2023, Defendant started rejecting Plaintiffs' payments. *Id.* ¶ 38. Kamara called Defendant to ask why the payment had been rejected, but Defendant refused to speak with her because she was allegedly not a confirmed successor in interest on the account. *Id.* ¶ 39. Defendant told Kamara that it could not discuss the account with her until she submitted documents showing she was a successor in interest on the account. *Id.* ¶ 40. Kamara complied with Defendant's instructions and submitted the requested paperwork. *Id.* ¶ 41. But Defendant still refused to acknowledge Kamara as a confirmed successor in interest. *Id.* ¶ 42. Instead, it required her to resubmit documents, several times, establishing her status as a confirmed successor in interest. *Id.* Kamara submitted all of the documents that Defendant requested. *Id.* ¶ 43. Plaintiffs also continued to submit their monthly payments each month, which Defendant always returned to them. *Id.* ¶ 44.

In approximately November 2022, Kamara received a notice from BWW Law Group stating that the Property would be sold at a foreclosure sale on January 22, 2025. *Id.* ¶ 45. This was the first notice that she had received regarding the potential foreclosure of the Property. *Id.* ¶ 46. She had not received any of the other notices required by the Deed of Trust, including an acceleration notice. *Id.* ¶ 46.

On January 13, 2025, Kamara sent a Qualified Written Request ("QWR") to Defendant. *Id.* ¶ 47. The QWR included information sufficient to identify the relevant mortgage account, including Kamara's and her mother's names, the loan number, and the Property address. *Id.* ¶ 48. The QWR was also sent to Defendant's designated address for receipt of such correspondence. *Id.* Kamara's QWR once more asked Defendant to recognize her status as a successor in interest, explaining that she had already provided evidence of her successor-in-interest status. *Id.* ¶ 49. Kamara also disputed Defendant's refusal to accept her payments and stated that she was ready to make all of the outstanding payments if Defendant would provide her with the amount required to bring the loan current. *Id.* The QWR also requested that Defendant provide her with the servicing notes, all monthly statements from 2024, and all of the invoices for the default related charges assessed to her loan. *Id.* ¶ 50. These documents would have supported Kamara's dispute with Defendant by, for example, demonstrating that its refusal to recognize her as a successor in interest and rejection of her payments were improper; demonstrating that the costs and fees assessed on the loan were improper; demonstrating that the costs and fees assessed on the loan were improper; and showing Kamara had communicated with Defendant and LoanCare on multiple occasions and provided necessary documents to show that her mother had passed away and that she was a successor in interest to the mortgage. *Id.* ¶ 51.

3

Defendant responded to Kamara's QWR on February 25, 2025. *Id.* ¶ 52. It refused to acknowledge that its refusal to acknowledge Kamara as a confirmed successor in interest for at least seven months was an error. *Id.* ¶ 54. It stated that it finally confirmed her status as a successor in interest as of February 25, 2025, and that it would provide that confirmation in a separate letter— which Kamara has never received. *Id.* ¶ 55. Defendant's response did not provide Kamara with the amount that would be required to bring the loan current, any of the monthly statements or invoices she requested, nor the full servicing notes for the loan. *Id.* ¶ 56.

Plaintiffs allege that Defendant's failure to respond to the issues raised in Kamara's QWR and provide the information she requested has caused her significant damages. *Id.* ¶ 57. For example, if Defendant had provided her with the amount required to bring the loan current, she could have paid that amount. *Id.* Instead, she has continued to incur late fees and other charges that she would not have suffered if Defendant had provided a correct response to her QWR. *Id.* In addition, Defendant's refusal to provide Kamara with the information that she requested has prevented her from supporting her disputes against Defendant and demonstrating that its servicing of her loan is incorrect. *Id.* ¶ 58. Kamara has also suffered emotional distress from the fear of losing the Property, which was the primary asset left to her by her late mother, because of Defendant's refusal to correct its servicing errors on the account. *Id.* ¶ 59. And Defendant has obstructed Plaintiffs' ability to mitigate the loss of the Property through reinstatement or other means by failing to provide her with information on reinstatement or other modifications that would avoid foreclosure. *Id.* ¶ 60.

### B. Procedural Background

On July 11, 2025, Plaintiffs filed their Amended Complaint in which Kamara asserts one count against Defendant for a violation of the Real Estate Settlement Procedures Act ("RESPA").[2] Dkt. 20. On August 8, 2025, Defendant filed its Motion to Dismiss. Dkt. 25. After receiving an extension, on September 12, 2025, Kamara filed her Opposition. Dkt. 35. After also receiving an extension, on October 9, 2025, Defendant filed its Reply. Dkt. 41.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the Court lacks jurisdiction over the subject matter of the action. A district court must dismiss an action over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

There are two ways in which a defendant may prevail on a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.* Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject-matter jurisdiction over the case apart from the

---

[2] Plaintiffs also collectively asserted one count for breach of contract against Defendant U.S. Bank Trust in its capacity as owner trustee for RFC 2 Acquisition Trust. Dkt. 20. Former Defendant U.S. Bank Trust was voluntarily dismissed and terminated as a defendant on September 17, 2025. Dkt. 38.

pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In such a case, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.3d 884, 891 (3d Cir. 1977).

### B. Rule 12(b)(6) Standard

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as

they are integral to the complaint and authentic[,]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

## III. ANALYSIS

In its Motion, Defendant argues in part that Kamara cannot maintain a private right of action under RESPA because she is not a "borrower" on the Loan. Dkt. 26 at 3. Defendant is correct.

RESPA limits its cause of action to "borrower[s]." 12 U.S.C. § 2605(f) ("Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure . . . ."). "A 'borrower' is someone who is personally obligated on a loan—i.e., someone who is actually borrowing money." *Keen v. Helson*, 930 F.3d 799, 800 (6th Cir. 2019) (so concluding after a thorough statutory interpretation analysis of 12 U.S.C. § 2605(f)). District judges in this District have recognized that simply "obtaining title to a property subject to a mortgage or making payments on the loan related to the mortgaged property does not make a person a 'borrower' for purposes of RESPA." *Kelly v. Nationstar Mortg., LLC*, 2020 WL 6790989, at *2 (E.D. Va. July 14, 2020) (holding that, even though Plaintiffs purchased the property "subject to" a mortgage and paid on that obligation, they cannot be considered "borrowers" under RESPA because they did not assume the loan); *accord Robinson v. Nationstar Mortg. LLC*, 2019 WL 4261696, at *6 (D. Md. 2019) (holding that, even though plaintiff signed the Deed, she was "not 'obligated' to pay the amount due on the Note and therefore . . . not a 'borrower' for purposes of RESPA"). "[O]nly people who are personally obligated under a loan— those who signed [a promissory note] or assumed it—can be borrower[s] under RESPA." *Keen*, 930 F.3d at 802; *see also Nelson v. Nationstar Mortg. LLC*, 2017 WL 1167230, at *3 (E.D.N.C. Mar. 28, 2017) ("Because plaintiff did not sign the promissory note and has not assumed the loan,

7

she is not a borrower under RESPA.") (collecting cases).  Here, Kamara does not allege that she is personally obligated on the loan, that she signed the promissory note, or that she assumed the loan.  *See* Dkt. 20.  Accordingly, Kamara is not a "borrower" under RESPA and cannot pursue a cause of action under the statute.

In her Opposition, Kamara argues that, in interpreting the statutory term "borrower," this Court is bound by or should otherwise find persuasive the 2018 Amendment to Regulation X promulgated by the Consumer Financial Protection Bureau (the "CFPB"), which states that "[a] confirmed successor in interest shall be considered a borrower for purposes of § 1024.17 and this subpart [Subpart C, 12 C.F.R. §§ 1024.30-1024.41]."[3]  12 C.F.R. § 1024.30(d).  As a preliminary matter, this regulation only purports to clarify that, for certain provisions of Regulation X, the CFPB intends its use of the term "borrower" to also apply to a confirmed successor in interest.  At least facially, the regulation does not claim to interpret the scope of the private cause of action provided by 12 U.S.C. § 2605(f).[4]  Moreover, although the Court recognizes that RESPA grants the CFPB the authority "to make such interpretations . . . as may be necessary to achieve the purposes of this chapter," 12 U.S.C. § 2617(a), the Court does not construe this provision to authorize the CFPB to expand the statutorily provided private right of action beyond the clear text, which limits the right of action to those personally obligated on a relevant mortgage loan, particularly through such an unclear means.  And, to the extent the regulation is generally

_____

[3] Under the regulation, a "successor in interest" is "a person to whom an ownership interest in a property securing a mortgage loan . . . is transferred from a borrower." 12 C.F.R. § 1024.30.

[4] Kamara dismisses this analysis in a footnote, stating only that, because Subpart C applies to "any mortgage loan," it must be the case that the CFPB meant that "[a] confirmed successor in interest shall be considered a borrower for purposes of . . . any mortgage loan." Dkt. 35 n.3.  But it is unclear to the Court why that would necessarily follow, and indeed this reading seems contrary to the plain meaning of the text of the regulations.  And, Plaintiffs' position, although not necessarily this particular argument, has been rejected by district judges in this Circuit.

interpreting "borrower" to include confirmed successors in interest, the Court finds that this is contrary to the clear text of RESPA and thus has minimal persuasive value. *See Keen*, 930 F.3d at 805 ("[Plaintiff] relies on the CFPB regulations solely as persuasive authority [because they became effective after the events leading to her lawsuit]. But when, as here, the text is clear, that is the end of the matter."). Thus, the Court finds that, regardless of her status or lack thereof as a confirmed successor in interest, Congress has not granted Kamara a private right of action under RESPA and her claim will be dismissed. Because the Court dismisses the claim on this basis, the Court does not reach Defendant's remaining arguments.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that Defendant Selene Finance, LP's Motion to Dismiss (Dkt. 25) is GRANTED; and it is

FURTHER ORDERED that the action is DISMISSED WITHOUT PREJUDICE.

It is SO ORDERED.

Alexandria, Virginia
March 18, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

9